In re Shawn Michael HUMES and
Shirley Jean Humes, Debtors.

Shawn Michael Humes, Plaintiff,

v.

LVNV Funding, L.L.C., Hosto, Buchan,
Prater & Lawrence, P.L.L.C.,
Defendants.

Bankruptcy No. 3:10–bk–12140 E.
Adversary No. 3:11–ap–01016.

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

Dec. 17, 2013.

852

Joel G. Hargis, Jonesboro, AR, Kathy Cruz, Hot Springs, AR, Annabelle Lee Patterson, Hot Springs, AR, for Plaintiff.

William P. Dougherty, for Defendants.

### PROPOSED ORDER GRANTING PLAINTIFF'S APPLICATION FOR ATTORNEY FEES AND COSTS

AUDREY R. EVANS, Bankruptcy Judge.

Now before the Court is an *Application for Approval of Cumulative Compensation for Attorney Fees and Costs* ("**Fee Application**") filed by Joel G. Hargis, Kathy Cruz, and Annabelle Lee Patterson ("**Plaintiff's Counsel**"), on behalf of Shawn Michael Humes (the "**Plaintiff**"), the debtor in the above-captioned bankruptcy case. The Plaintiff prevailed in an adversary proceeding against LVNV Funding, L.L.C. ("**LVNV**") and Hosto, Buchan, Prater & Lawrence, P.L.L.C. ("**Hosto**") (collectively, the "**Defendants**"). In its Fee Application, the Plaintiff seeks $72,411.70 in attorney fees and $2,107.99 in costs from Hosto that were incurred by Plaintiff's Counsel in this adversary proceeding.[1] William P. Dougherty, on behalf of the Defendants, filed a *Response in Opposition to Fee Request of Counsel for*

---

1. This figure does not include the fees and costs of filing and defending the Fee Application.

*Plaintiff* ("**Fee Objection**") opposing the Fee Application as unreasonable. After carefully reviewing the application and the complexities of this case, the Bankruptcy Court recommends that the District Court grant the Fee Application in its entirety. Before discussing the Court's reasoning, the Court first briefly summarizes the procedural history of this case.

## PROCEDURAL HISTORY

The Plaintiff commenced this adversary proceeding on January 28, 2011, by filing a complaint against the Defendants. The complaint asserted violations of the Fair Debt Collection Practices Act, codified at 15 U.S.C. §§ 1692, et seq. ("**FDCPA**"), the Arkansas Fair Debt Collection Practices Act, codified at Ark.Code Ann. §§ 17–24–501, et seq. ("**AFDCPA**"), and the Arkansas Deceptive Trade Practices Act, codified at Ark.Code Ann. §§ 4–88–101, et seq. ("**ADTPA**"). Additionally, the Plaintiff asserted claims for breach of contract, fraud, and misrepresentation.[2] Two weeks after the complaint was filed, on February 11, 2011, an attorney from Hosto sent an email to the Plaintiff's Counsel with the following message:

> I would request that you dismiss this suit immediately as it is simply incorrect. If this is not done, we will aggressively defend the action and ask for reimbursement of our attorney fees. I look forward to hearing from you.[3]

When the Plaintiff did not dismiss the suit, the Defendants filed a *Motion to Dismiss* the case on February 22, 2011.

Two years of litigation then followed. Between the filing of the Defendants' *Motion to Dismiss* and the trial of the Plaintiff's claims on January 11, 2013, the Plaintiff filed his response and a supporting brief to the Defendants' *Motion to Dismiss;*[4] twice amended his complaint to address alleged deficiencies asserted by the Defendants; filed a response and a supporting brief to Defendants' *Motion for Summary Judgment and/or for Judgment on the Pleadings;* and ultimately obtained a favorable order from this Court denying the Defendants' *Motion for Summary Judgment and/or for Judgment on the Pleadings* in its entirety. *See Humes v. LVNV Funding, L.C.C. (In re Humes)*, 468 B.R. 346 (Bankr.E.D.Ark.2011). After discovery concluded on November 16, 2012, a trial on the Plaintiff's claims was held on January 11, 2013. The parties then submitted briefs of their closing arguments.

## The Bankruptcy Court's Memorandum Opinion

After an extensive review of all the testimony and exhibits offered at the January 11 trial, the Court entered a Memorandum Opinion on July 17, 2013. *See Humes v. LVNV Funding, L.C.C. (In re Humes)* ("*Humes II*"), 496 B.R. 557 (Bankr. E.D.Ark.2013), *report and recommendation adopted,* No. 3:13–cv–00179–SWW (E.D.Ark. Aug. 7, 2013). In the Memorandum Opinion, the Court proposed the following findings of fact and conclusions of law to the District Court: (1) Hosto violated the FDCPA and was liable for $10,000

---

**2.** The Plaintiff also sought disallowance of LVNV's proof of claim and avoidance of any lien the Defendants had obtained against the Debtor's property. For the purposes of this proposed order, these claims are only relevant as further evidence of the complexity of this litigation.

**3.** The Plaintiff included the Hosto email in their Fee Application as evidence of the vigorous defense mounted by the Defendants. The veracity and authenticity of the email is not disputed.

**4.** The *Motion to Dismiss* was dismissed as moot when the Plaintiff filed its *First Amended Complaint.*

in actual damages, $1,000 in statutory damages, costs, and attorney fees; (2) LVNV, through Hosto, its agent, breached a modified contract with the Plaintiff, and Hosto committed the torts of fraud and misrepresentation, although the Plaintiff was not entitled to additional damages based on these claims; and (3) the Plaintiff's remaining noncore claims fail as a matter of law or are not supported by the evidence. *Humes II*, 496 B.R. at 589.

On August 7, 2013, the District Court entered an order "adopt[ing] in full the Bankruptcy Court's proposed findings of fact and conclusions of law." Case No. 3:13–cv–00179–SWW. That same day, the District Court entered a judgment substantially similar to that proposed in the Memorandum Opinion. The judgment directed Plaintiff's Counsel to submit an application to the Bankruptcy Court, itemizing their costs and attorney fees. Plaintiff's Counsel has done so. The District Court further directed the Bankruptcy Court to "review the application and submit its review as a proposal to this Court to be added to the final Judgment, if accepted." This constitutes the Court's proposal.

## LEGAL STANDARD

■ Under the "American Rule," parties to litigation must pay their own attorney fees unless, for example, a statute provides otherwise. *In re Hunter*, 203 B.R. 150, 151 (Bankr.W.D.Ark.1996). The FDCPA is one such statute. It provides for a prevailing plaintiff to be awarded "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). It is undisputed that the Plaintiff prevailed in this adversary litigation. The Plaintiff was awarded $10,000 in actual damages and $1,000 in statutory damages pursuant to its FDCPA claims. The sole question is

whether the Plaintiff's attorney fees are "reasonable." The Court finds that they are.

### The Attorney Fees Are Reasonable

■ "[C]ourts have discretion in calculating reasonable attorney's fees under [the FDCPA]...." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 598, 130 S.Ct. 1605, 1621, 176 L.Ed.2d 519 (2010). To determine the reasonableness of attorney fees, courts utilize the "lodestar method" which calculates the number of hours "reasonably expended on the subject matter multiplied by a reasonable hourly rate." *Humes*, 496 B.R. at 582–83 (citing *Quigley v. Winter*, 598 F.3d 938, 957 (8th Cir.2010); *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Utilizing the lodestar method, the Court concludes that the attorney fees incurred here were reasonable.

■ Initially, the Court finds the $250 hourly rate charged by Plaintiff's Counsel to be reasonable and consistent with the market rate charged for adversary litigation brought in Jonesboro where this case was heard. A rate is reasonable when "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 (8th Cir.1988) (quoting *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547–48 n. 11, 79 L.Ed.2d 891 (1984)). The attorneys comprising Plaintiff's Counsel are well-versed in bankruptcy law and are experienced bankruptcy litigators; their hourly fee is commensurate with that charged by similarly experienced bankruptcy practitioners in Jonesboro and throughout the Eastern District of Arkansas.

In finding that Plaintiff's Counsel charged a reasonable hourly rate, the

Court also notes that they worked on a contingency basis. This normally requires charging a higher fee than a fixed fee arrangement to compensate counsel for "the risk of receiving no compensation for services rendered...." *Bayless v. Irv Leopold Imports, Inc.*, 659 F.Supp. 942, 944 (D.Or.1987). When Plaintiff's Counsel commenced this adversary proceeding, it was far from certain that the Plaintiff would win. Indeed, Hosto's email stating that it would "aggressively defend the action" would suggest that this litigation was not amenable to settlement and would be fought to judgment. The procedural history of this case confirms the same. However, Plaintiff's Counsel did not charge a higher rate for working on a contingency bases. They charged their normal rate. The Court finds that their hourly rate is reasonable.

Furthermore, the Court finds that the number of hours expended on this adversary litigation is reasonable as well. In their Fee Objection, the Defendants characterize this adversary proceeding as "essentially a straightforward FDCPA case" that did not require the work of three attorneys and the attendant rate charged by them. Defs.' Resp. at p. 2. The Defendants go so far as to say that "[n]othing in the case was particularly unusual or complex." *Id.* at p.4. This case involved claims predicated on three consumer protection statutes, three common law claims, several other bankruptcy claims, as well as issues of vicarious liability. To say that this nearly three-year long litigation—fought tooth and nail every step of the way—was simply a dispute over liability under the FDCPA is not accurate. Even an outcome-oriented view of this case establishes the contrary: the Plaintiff did not just prevail on his FDCPA claims, the Plaintiff prevailed on its breach of contract, fraud, and misrepresentation claims as well.[5] Based on the Court's 11 years of experience hearing adversary litigation, its review of all the pleadings, its active and prolonged participation in this case,[6] and defense counsel's own apparent confusion in this case,[7] the Court finds the number of hours expended on this litigation to be commensurate with a case of this complexity.

Finally, the Defendants argue that (1) counsel conducted duplicative work; and (2) certain entries are unsubstantiated. To the extent these arguments are premised on the alleged "simplicity" of this case, the Court finds that the Defendants' objections are overruled for the reasons previously stated. This case was not "mill work"; there was nothing routine here. As for the Defendants' contention that the work conducted by Plaintiff's Counsel was duplicative, the Court has carefully reviewed the Fee Application and time entries made by Plaintiff's Counsel. They establish that broad issues were segregated into parts for the purpose of research and writing. Additionally, when particular

---

5. Counsel for the Defendants was also apparently confused by the complexity of the case. As noted in *Humes II*, counsel argued in his closing brief that the Plaintiff failed to present any evidence that LVNV was a "debt collector" under the FDCPA. 496 B.R. at 576–77. However, counsel had previously filed an answer on behalf of the Defendants in which the Defendants *admitted* to being debt collectors. *Id.* at 577.

6. In this case, the Plaintiff testified to one version of the facts; the Defendants testified to a different version. To prove that the Plaintiff was telling the truth, Plaintiff's Counsel was faced with a labor intensive endeavor: to decipher Hosto's internal record keeping system. Plaintiff's Counsel prevailed in what was clearly an uphill battle; using Hosto's own records, counsel proved that the Plaintiff was telling the truth.

7. *See infra* note 5.

matters called for collaboration (*e.g.*, drafting the Plaintiff's complaint or responding to the Defendants' *Motion for Summary Judgment and/or for Judgment on the Pleadings*) each attorney performed a specific service such that one attorney would conduct legal research and draft a pleading for another to review. Although this thorough and collaborative process required time, the Plaintiff's attorneys were not performing the exact same service as their co-counsel. Their pleadings and advocacy reflected their effort spent in preparation. Finally, the Court finds that the time entries in the Plaintiff's Fee Application are sufficiently detailed such that the Defendants' arguments that the entries are unsubstantiated are overruled.[8]

## THE IMPORTANCE OF AWARDING THESE FEES

Having concluded that the attorney fees in this case are "reasonable" under § 1692k(a)(3) of the FDCPA and the lodestar method, the Court briefly reiterates the importance of paying Plaintiff's Counsel for the time expended. If this case were purely about money, it would be easy to view a bill of $74,519.69 in attorney fees skeptically when this case, at first glance, appears to be a dispute over an approximate $3,000 default judgment. However, there was more at stake here:

> The issues presented in this case concern fundamental fairness, which is not measured by debt amounts. Attorneys deserve to be fairly compensated when representing clients in all income brackets.

*Humes II*, 496 B.R. at 583.

■ Moreover, as noted by Plaintiff's Counsel, cases brought to vindicate rights of consumers are typically fraught with uncertainty, making representation expensive. The amount of money at issue in this case does not reflect the vigorous defense that was mounted, and the financial resources necessary to prevail. Debt collectors are not incentivized to change their practices and comply with the FDCPA unless the Court enforces the statute and awards opposing counsel their fees. A significant deterrent to a debt collector is the risk that if a debtor finds competent legal representation, and prevails, then the debt collector will have to pay attorney fees. One of the primary purposes of the FDCPA " 'is to eliminate abusive debt collection practices.' " *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir.1998) (quoting 15 U.S.C. § 1692(e)). This lawsuit and this proposed order furthers that purpose.

■ Lastly, the Court notes that Congress could have capped the amount of recoverable attorney fees under the FDCPA, but it did not choose to do so. Instead, Congress asked courts to determine whether claimed attorney fees are "reasonable" based on their actual experience and the facts of the case.[9] This

---

**8.** As an example of allegedly unreasonable and duplicative work, the Defendants cite time entries made by Mr. Hargis on March 22, 2011 and by Ms. Cruz on March 25, 2011. These entries indicate that both Mr. Hargis and Ms. Cruz researched distinct legal claims as well as registration issues with the "Board of Collection Agencies." In their *Reply* to the Defendants' Fee Objection, Plaintiff's Counsel states that the research projects related to the Board of Collections Agencies "were distinct, necessary, and not duplicative." Given the general sufficiency and itemization of the time entries made by Plaintiff's Counsel, the Court does not find this particular entry to warrant a reduction of attorney fees.

**9.** The fact that the Plaintiff's attorney fees exceed his recovery does not make the award "unreasonable." *See, e.g., Goray v. Unifund CCR Partners*, No. CIV. 06–00214 HG–LEK, 2008 WL 2404551, at *1, *10 (D.Haw. June 13, 2008), *report and recommendation adopted*, No. CIV. 06–00214 HG–LEK, 2008 WL 2714369 (D.Haw. July 11, 2008) (award-

Court applies the statute as written; it finds the attorney fees and costs incurred by Plaintiff's Counsel to be reasonable.

## CONCLUSION

In summary, after carefully reviewing the Fee Application, the Fee Objection, and all other pleadings, the Court proposes that the District Court find: (1) Plaintiff's Counsel charged a rate deemed reasonable by this Court and other courts applying the lodestar method; (2) Plaintiff's Counsel did not engage in duplicative work but divided the same between them; (3) Plaintiff's Counsel kept detailed records of their time spent on the prosecution of this case; and (4) therefore, the Plaintiff's Fee Application is reasonable and should be granted in its entirety.

Based on the proposed findings of fact and conclusions of law stated in this order, the Court, pursuant to Fed. R. Bankr.P. 9033, proposes that $72,411.70 in attorney fees and $2,107.99 in costs be entered against Hosto and added to the judgment entered on by the District Court on August 7, 2013.

**IT IS SO ORDERED.**

ing $53,522.50 in attorney fees and $2,048.57 in costs on $1,000 statutory damages); *Norton v. Wilshire Credit Corp.*, 36 F.Supp.2d 216, 218, 221 (D.N.J.1999) (awarding $57,995.90 in fees on $789.56 in costs and $5,800 in damages); and *Armstrong v. Rose Law Firm, P.A.*, No. CIV. 00–2287MJD/SRN, 2002 WL 31050583 (D.Minn. Sept. 5, 2002) (awarding $43,180 in claimed attorney fees on $1,000 in statutory damages).